UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| Jonnah Garcia, | Case No. 2:18-cv-02311-RFB-VCF |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| Equifax Information Services LLC, et al., | |
| Defendants. | |

**I.  INTRODUCTION**

Before the Court is Defendant National Recoveries, Inc.'s Motion for Summary Judgment (ECF No. 32).

**II.  PROCEDURAL BACKGROUND**

Plaintiff filed the operative complaint in this matter on December 5, 2018, alleging, *inter alia*, that Defendant violated sections 1692d, 1692e, 1692f, and 1692g of the Fair Debt Collection Practices Act. ECF No. 1 at 9-11. Plaintiff and Defendant Trans Union LLC filed a Notice of Settlement on January 21, 2019, ECF No. 13, and Plaintiff voluntarily dismissed Defendant Trans Union LLC on February 20, 2019, ECF No. 20. Plaintiff and Defendant Experian Information Solution, Inc. filed a stipulation of dismissal on March 6, 2019, ECF No. 22, which was granted on March 8, 2019, ECF No. 23. Plaintiff and Defendant Navient Solutions, LLC filed a stipulation of dismissal on June 17, 2019, ECF No. 28, which was granted on June 18, 2019, ECF No. 29.

Defendant National Recoveries, Inc. filed the instant motion on July 26, 2019. ECF No. 32. Plaintiff responded on August 26, 2019, ECF No. 37, and Defendant replied on September 9, 2019, ECF No. 38. Defendant filed a Notice of Objection to Plaintiff's Evidence in Opposition to

Summary Judgment on September 9, 2019. ECF No. 39.

A hearing on the motion was held on January 10, 2020.

### III. FACTUAL BACKGROUND

#### a. Undisputed Facts

The Department of Education placed Plaintiff's account for collection with Defendant on or about December 24, 2016. ECF No. 32-1 at 2. Plaintiff's alleged account balance was owed on a Federal Direct Stafford Loan. Id. The amount owed includes an outstanding principal balance of $9,167.81 as well as accrued interest. ECF No. 32-6 at 3. The alleged promissory note was signed on June 13, 2014. It lists as references "John Garcia" and "Jamie Rios." ECF No. 32-6 at 5. Defendant was retained by the Department of Education to facilitate collection on the outstanding loan balance. Plaintiff disputed the debt for the first time with Defendant on March 22, 2017. ECF No. 37 at 3; ECF No. 38 at 3.

On November 28, 2018, The Department of Education issued a Garnishment Hearing Decision, stating that the Department had determined Plaintiff's wages were subject to a garnishment order. ECF No. 32-6 at 2. Defendant facilitated the garnishment of Plaintiff's wages as a result of this decision.

#### b. Disputed Facts

The parties dispute whether Plaintiff signed the Promissory Note at issue. According to Plaintiff, the signature on the promissory note is fraudulent, therefore she did not take out the loan at issue and has never applied for a student loan. Defendant counters that the Department of Education determined at a hearing that her signature on the promissory note indicates she did take out the federal loan at issue and Defendant acted in accordance with that finding.

The parties also dispute whether Defendant is responsible for garnishing Plaintiff's wages. Plaintiff states Defendant is responsible for determining when a consumer is eligible for wage garnishment, and therefore is responsible for the garnishment of Plaintiff's wages. Defendant counters that the Department of Education determined Plaintiff's wages should be garnished, not Defendant, and that while Defendant facilitates garnishment after the Department of Education makes that determination, Defendant is not responsible for the decision itself and therefore did not

garnish Plaintiff's wages.

## IV. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation and internal quotation marks omitted) (alteration in original).

### B. The Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692 – 1692p) "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." Heintz v. Jenkins, 514 U.S. 291, 292 (1995). Section 1692d proscribes debt collectors from engaging in conduct in connection with the collection of a debt "the natural consequence of which is to harass, oppress, or abuse." It further provides a list of examples of such proscribed behavior. 15 U.S.C. §§ 1692d(1)-(5). Section 1692e proscribes debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e proceeds to provide a non-exhaustive list of conduct that is a violation of section 1692e, including the false representation of "the character, amount, or legal status of any debt," and "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.' " 15 U.S.C. §§ 1692e(2)(A), 1692e(8). Section 1692f proscribes debt collectors from using "unfair or

unconscionable means to collect debt or attempt to collect any debt." The subsection proceeds to provide examples of such unfair practices including, *inter alia*, "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law). Section 1692g requires debt collectors to validate debts via a written notice containing specified information, and in the event a consumer timely disputes the debt, requires a debt collector to "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."

## V. DISCUSSION

Defendant asserts a number of procedural arguments in its motion about whether Plaintiff may assert FDCPA claims against Defendant. In its reply, Defendant asserts further arguments that attack the substance of Plaintiff's FDCPA claims, including an assertion that Plaintiff failed to timely dispute her debt. As an initial matter, the Court held at the hearing on this motion and concluded that it would not consider arguments raised in Defendant's reply, which go to the merits of Plaintiff's claim and were not raised in the original motion, which deprived Plaintiff an opportunity to respond. The Court further held that it would not rely upon arguments in Plaintiff's opposition that rely on deposition testimony, as those depositions were taken after Defendant filed the instant motion. The Court therefore limits its analysis to the arguments made in the original motion and opposition, excluding any reliance on deposition testimony. See e.g., Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment the district court should not consider the new evidence without giving the [non]-movant an opportunity to respond.") (quotation and citation omitted). As Defendant did not raise the issue of Plaintiff's alleged untimely dispute in its original motion, the Court does not consider it here.

### A. Private Right of Action under the Higher Education Act ("HEA")

Defendant argues Plaintiff's claim is a disguised HEA claim for wrongful garnishment and

should therefore be barred, as the Direct Stafford Loan at issue is governed by the Higher Education Act, which does not endow student loan debtors with a private right of action under the Act. ECF No. 32 at 6-8. Plaintiff counters that her claims arise out of the FDCPA; she is not making a wrongful garnishment claim but alleging that Defendant "engaged in a campaign of continued collection in the face of overwhelming fraud and identity theft . . . . mischaracterized the character, amount, and legal status of the Debts by pursuing them knowing they were clearly fraudulent . . . . and collected interest, fees, charges, and expenses not authorized by the Promissory Note because [Plaintiff] did not sign it." ECF No. 37 at 7. Plaintiff asserts these alleged actions constitute actionable FDCPA claims with no connection to the HEA.

"There is no express right of action under the HEA except for suits brought by or against the Secretary of Education." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing 20 U.S.C. § 1082(a)(2). The Ninth Circuit has also held that there is no implied private right of action for educational institutions to sue loan guarantors. Id.

The Court finds that summary judgment in favor of Defendant on this argument is unwarranted. Plaintiff asserts plainly in opposition that she makes no allegations under the HEA and points to specific alleged "misdeeds" that are actionable under the FDCPA and for which she is suing Defendant. Moreover, as Plaintiff notes, the Private Collection Agency (PCA) Procedures Manual provided to collection agencies by the Department of Education, which determines the procedures and policies for collection of defaulted student loans, states explicitly that it does not relieve debt collectors of "their obligation to comply with all of the statutory and regulatory provisions governing the statement of work . . . ." Ex. 8 at 2, ECF No. 37-8. As a debt collector, Defendant is required to comply with the FDCPA while engaged in the collection of defaulted student loans. Plaintiff is entitled to allege it has failed to do so here, and Defendant may not mischaracterize her allegations such that she no longer has a cause of action.

The Court finds that Plaintiff may proceed with her FDCPA claims under several separate theories. First, she has alleged that NRI failed to investigate and confirm the basis for her alleged debt. She alleges multiple communications to NRI challenging the debt and that NRI took no action to verify the debt. Second, NRI improperly recommended garnishment knowing that the basis for

the debt was invalid and unsubstantiated. The theory here is not the NRI is solely responsible for the garnishment of Plaintiff's wages but that its communication of the validity of the debt—a checklist that must be confirmed as conceded by NRI's Vice President of Compliance—supports and serves as a basis for garnishment. Plaintiff alleges that NRI was aware that the DOE relied upon and expected NRI to provide complete and accurate information and that, in this case, in knowingly failed to do so. Third, Plaintiff alleges that NRI participated in the collection of a debt that it knew, or should have known was invalid had it properly investigated. The Court finds these all to be cognizable claims under the FDCPA against NRI and from which it has no immunity or protection based upon the HEA.

### B. Wage Garnishment

Defendant asserts that even assuming *arguendo*, that Plaintiff asserts violations of the FDCPA and not the HEA for wage garnishment, as the Court finds she does, her FDCPA claims are barred by case law indicating that a plaintiff must show evidence that the private collection agency was responsible for the decision to garnish wages. ECF No. 32 at 8-9 (citing Sanon v. Dep't of Highter Educ., No. 06CV4928SLT(LB), 2010 WL 1049264, at *8 (E.D.N.Y. Mar. 18, 2010)). Defendant argues that Plaintiff cannot establish Defendant is responsible for that decision. Id. at 9. Plaintiff counters that Defendant, and not the Department of Education, decides whether to approve Administrative Wage Garnishment (AWG), as evidenced by the PCA Manual, which describes a debt collector's role as including the verification of candidates for AWG, "preparing an evaluation of hardships, and linking the borrower to the employer for garnishment." ECF No. 37 at 9 (citing Ex. 8 at 3, ECF No. 37-8).

The Court first notes that there is no clear caselaw in this circuit establishing the precise contours of an FDCPA claim based upon a recommendation or decision to garnish wages in a circumstance similar to that in this case. As the Court has already found, the decision by a debt collector to recommend or participate in the garnishment of wages is separately actionable under the FDCPA. The Court therefore does not find that a claim under the FDCPA that involves the garnishment of wages necessarily requires that a Plaintiff prove that the debt collector 'made the decision to garnish.' As noted, the FDCPA provides a nonexhaustive list of and general principles

for identifying violative conduct. See 15 U.S.C. § 1692e. The Court does not find an FDCPA claim involving garnishment to necessarily require proof that the debt collector 'made the decision' to garnish so long as the debt collector's conduct regarding the garnishment violates Section 1692e.

Notwithstanding the Court's finding that such a 'decisionmaker' framework is not necessary, the Court will review and consider NRI's role in the garnishment of Plaintiff's wages and whether in fact it did decide or provide a basis for the decision to garnish her wages. 20 U.S.C. § 1095a which governs wage garnishment requirements for loans made under the Higher Education Act, states that:

> Notwithstanding any provision of State law, a guaranty agency, or the Secretary in the case of loans made, insured or guaranteed under this subchapter that are held by the Secretary, may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment under a repayment agreement with the Secretary . . . .

Section 7.3 of the PCA Manual governs the roles and responsibilities of private collection agencies and states:

> PCAs must strictly adhere to the requirements described in this chapter to ensure that AWG is employed only *as a tool of last resort*. In the AWG process, the PCA must:
>
> 1. strive to negotiate account repayment, prior to review for AWG;
> 2. verify borrower's demographic information (name, address, date of birth, social security number);
> 3. verify borrower's place of employment information;
> 4. verify candidates for AWG;
> 5. verify garnishment information with employer
> 6. link borrower to employer to initiate AWG;
> 7. assist borrowers with options available prior to and after the garnishment order is sent to the employer;
> 8. assist employers with questions on the garnishment orders received;
> 9. identify non-compliant employers and make recommendations for litigation;
> 10. monitor for and identify the borrowers' requests for hearings(RFH) and verify timeliness of the borrower's request; and
> 11. prepare a preliminary evaluation of hardship claims and attempt to secure additional information and documentation that may be needed to properly evaluate the objections raised by the

borrower to garnishment.

Ex. B, ECF No. 32-3 at 4 (citing Federal Student Aid, U.S. Department of Education, PCA Procedures Manual for Private Collection Agencies contracted by Federal Student Aid (2019)).

The Court finds that there is a genuine dispute of material fact as to whether Defendant is directly responsible for garnishing Plaintiff's wages. Plaintiff has presented evidence in the form of the PCA Manual which asserts that Defendant is responsible for determining whether Plaintiff is eligible for wage garnishment. Thus, though the statute states that the Secretary "may garnish" an individual's disposable pay, whether the Secretary may choose to do so is informed by a private collection agency's investigation, evaluation and recommendation. It cannot therefore be said on the facts Defendant has presented that there is no dispute as to whether Defendant, and not the Department of Education, is responsible for garnishing Plaintiff's wages.

### C. Bona Fide Error Defense

Defendant further argues that to the extent Plaintiff asserts FDCPA claims based on Defendant's recommendations to the Department of Education regarding garnishment, Defendant is not liable pursuant to the bona fide error defense. Defendant states that it initiated wage garnishment pursuant to a Department of Education administrative decision validating a debt and cites case law stating this "likely protects" debt collectors like Defendant from FDCPA liability. ECF No. 32 at 9 (quoting Wheeler v. Premiere Credit of N. Am., LLC, 80 F. Supp. 3d 1108, 1115 (S.D. Cal. 2015)). Therefore, if Plaintiff owed the debt, and Defendant sought to collect pursuant to that determination, there was no violation of the FDCPA. Moreover, Defendant argues that even if "there is a triable issue whether Plaintiff owed the debt," the Department of Education guidelines are reasonably adapted to avoid collecting on a federal student loan that is allegedly not owed. Id. at 10. Defendant asserts that the Department of Education requires a hearing at which Plaintiff could submit evidence and that it is reasonable not to require Defendant to perform an independent investigation which could result in conflicting determinations. Id.

Plaintiff responds Defendant has no procedures for processing fraudulent debts, does not review the promissory note when fraud is alleged, only trains its employees for thirty total minutes

on identity theft, and has no procedure in place when a letter is flagged as returned to sender. ECF No. 37 at 10. Accordingly, Defendant's procedures are not reasonably adapted to avoid collection of a fraudulent debt as required by the FDCPA. Plaintiff further argues that Defendant cannot rely upon the Department of Education's representations but must pursuant to the FDCPA conduct its own research, and that Defendant failed to conduct "even a cursory investigation before approving garnishment in this matter." Id. Plaintiff distinguishes Wheeler v. Premiere Credit of N. Am., LLC, 80 F. Supp. 3d 1108, 1115 (S.D. Cal. 2015) by noting first that the court there denied the debt collector's motion for summary judgment and granted the plaintiff's. Id. at 10-11. Moreover, the proposition Defendant cites is dicta, and in any event is only relevant where the loan "actually belongs to the consumer," which is disputed here. Id. at 11.

"Although the FDCPA is a strict liability statute, it excepts from liability those debt collectors who satisfy the 'narrow' bona fide error defense." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011) (citation omitted). 15 U.S.C. § 1692k(c) details the circumstances under which a debt collector may claim the bona fide error defense:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

"The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof. Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d at 948 (internal quotation and citation omitted).

"The defense does not protect a debt collector whose reliance on a creditor's representation is unreasonable." Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1006 (9th Cir. 2008). "Mere assertion" that the procedures employed are reasonably adapted to avoid the error at issue is insufficient. Id. at 1007. "The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. Only then is the mistake entitled to be treated as one

made in good faith." Id. (citation omitted).

The Court finds there is a genuine dispute of material fact both as to whether NRI ahd sufficient and appropriate procedures "reasonably adapted to avoid" the violation at issue here. Defendant may not rely on the procedures employed by the Department of Education to establish that wage garnishment is appropriate if that reliance is unreasonable. Plaintiff has pointed to evidence that suggests Defendant itself is responsible for the initiation of wage garnishment and for verifying that a consumer is subject to wage garnish ent.Defendant's reliance on the Department of Education's determination may be unreasonable. Moreover, if it is Defendant's internal procedures which are at issue, the Court cannot determine as a matter of law that they are "reasonably adapted to avoid" the error at issue here. That is a question for the jury.

### D. 15 U.S.C. § 1692g

Finally, Defendant asserts that Plaintiff's claim based on Defendant's collection letters is time barred by the one-year statute of limitations. ECF No. 32 at 11. The last of five letters was sent on February 21, 2017 and Plaintiff did not file her complaint until December 5, 2018. Id. Plaintiff concedes that her claim under 15 U.S.C. § 1692g should be dismissed. ECF No. 37 at 7 n.24. The Court therefore dismisses the claim.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 32) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's claim for relief as to § 1692g of the Fair Debt Collection Practices Act under count four is DISMISSED.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order by May 15, 2020.

DATED March 31, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**